UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **Nieves Rocha, As the Personal Representative of the Estate of Oscar Rocha, Deceased,** | ) ) ) ) | |
| Appellant, | ) ) | Appeal No. 15-7053 |
| v. | ) ) | 1:14-cv-01136-RC |
| **Brown & Gould, LLP,** *et al.*, | ) ) ) | |
| Appellees. | ) ) | |

## MOTION FOR SUMMARY AFFIRMANCE

In accordance with Rule 27(g) of this Circuit's Rules, Appellees Brown & Gould, LLP and Daniel A. Brown (collectively, "B&G" or "Appellees") move for a summary affirmance of the District Court's (Honorable Rudolph Contreras) April 30, 2015 order granting summary judgment to the Appellees and denying Appellant's motion for partial summary judgment.[1]

## I.    INTRODUCTION.

Summary disposition of an appeal is appropriate where the issues have been fully briefed and considered below and no further benefit can be obtained by additional briefing. *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 298 (D.C. Cir. 1987) ("To summarily affirm an order of the district court, this court must

---

[1] The order and memorandum opinion are attached as Exhibits A and B.

conclude that no benefit will be gained from further briefing and argument of the issues presented"); *Sills v. Bureau of Prisons*, 761 F.2d 792, 794 (D.C. Cir. 1985) ("There is nothing that could be brought before this court by the appellee which could affect the need to order the complaint reinstated. Because the merits of Mr. Sills' right to proceed are so clear, plenary briefing, oral argument, and the traditional collegiality of the decisional process would not affect our decision. In sum, the merits of this action have been given the fullest consideration necessary to a just determination; accordingly, summary disposition is appropriate."). This case is a parade example of an appeal ripe for summary adjudication.

In this case, the issues presented to the District Court were exhaustively briefed in a series of dispositive motions consolidated by the District Court for disposition in the final, summary judgment motion. The District Court issued an exhaustive, 59-page memorandum opinion addressing every possible claim and theory advanced by the Plaintiff. *See* Section II, A & B, *infra*. In the face of this, Appellant, Nieves Rocha, has presented to this Court only a boilerplate *Statement of Issues to Be Raised*, objecting generally to the District Court's grant of Defendants' summary judgment (and denial of Plaintiff's *pro forma* cross-motion for summary judgment), without raising one single, specific appellate issue for this Court to consider. "[T]o obtain reversal of a district court judgment based on multiple, independent grounds, an appellant must convince [the Court] that every

2

stated ground for the judgment against [her] is incorrect." *In re Under Seal,* 749 F.3d 276, 289 (4th Cir. 2014); *accord Jankovic v. Int'l Crisis Grp.,* 494 F.3d 1080, 1086, 377 U.S. App. D.C. 434 (D.C. Cir. 2007). *See Sapuppo v. Allstate Floridian Ins. Co.,* 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed"). Rocha's failure to identify a single appellate issue belies any claim that this appeal has merit and simply ignores the multiple, independent grounds, fully briefed below, supporting the District Court's grant of summary judgment.

In this legal malpractice suit, which arose out of the dismissal of Rocha's asbestos-related, personal injury/wrongful death claims in the D.C. Superior Court, Rocha made two claims against B&G: first, her personal injury/wrongful death claims should have been filed in Maryland (in addition to D.C. and Virginia where the suit was filed); and second, defendant Brown did not obtain the necessary legislative change in the D.C. statute of limitations to prevent the dismissal (*i.e.,* D.C. Code § 12-311). The District Court consolidated its consideration of multiple dispositive motions by the Appellees addressing ongoing deficiencies in the ever-changing pleadings and, after an exhaustive analysis of all possible variations on Appellant's claim, granted summary judgment.

Specific to a summary affirmance inquiry, the decision of the District Court demonstrates without a doubt that the Appellees are entitled to judgment as a matter of law **regardless** of the legal-theory-of-the-day proposed by the Appellant. As set out below, the District Court's legal analysis based upon the undisputed material facts lifted up every rock to provide Rocha with every opportunity to advance her legal claims (whether they were pleaded or not, or advanced and abandoned) and dispensed with each one in favor of the Appellees. On the undisputed facts below, not one claim, not one legal theory, pled or unpled, which has been advanced by the Appellant, Nieves Rocha, warrants any further consideration. It would be a waste of the Court's time and that of the parties to further brief these issues – which were exhaustively briefed below and addressed by the District Court - and it would be impermissible to permit Rocha to brief issues on appeal that she abandoned below by not addressing in response to dispositive motions. *See Taxpayers Watchdog, Inc. v. Stanley, supra.*

## II. ARGUMENT

### A. The District Court Correctly Held That the Appellant's Legal Malpractice Claim Failed on the Merits.

First, Rocha **<u>conceded</u>** both the application of the dispositive judgmental immunity rule protecting from "second-guessing" the exercise of informed judgment by the Defendant Brown in determining a choice of forum for the underlying suit as well as the *prima facie* requirement for a demonstration of

4

proximate cause in connection with her legal malpractice claim. Mem. Op., p. 34 (Rocha "**d[id] not respond** to Defendants' lengthy judgmental immunity argument, **nor d[id] she challenge** the many judgmental immunity cases that Defendants cite. Instead, Rocha relie[d] on her expert's testimony to argue that the standard of care required Defendants to file a lawsuit in Maryland.") (*citing COMPTEL v. FCC,* 945 F. Supp. 2d 48, 55 (D.D.C. 2013) (emphasis added); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C. 2003) *aff'd,* 98 F. App'x 8 (D.C. Cir. 2004); and Mem. Op., p. 38 ("Mrs. Rocha fails to address this argument and instead simply responds that Defendants confuse professional judgment with proximate cause . . . But only Mrs. Rocha is confused, as proximate cause clearly is a distinct, and necessary, element for a legal malpractice claim.").

Rocha had "an obligation to spell out her arguments squarely and distinctly;" because she didn't, she has *forever* held her peace. *See Dinkel v. MedStar Health Inc.,* 880 F. Supp. 2d 49, 58 (D.D.C. 2012). Treating the judgment immunity rule and proximate cause arguments as conceded was appropriately within the discretion of the District Court. *Asare v. LM-DC Hotel, LLC,* 2014 U.S. Dist. LEXIS 91415, at *6-7 (D.D.C. July 7, 2014) (*quoting Hopkins, supra,* 238 F. Supp. 2d at 178.). *See also, Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz,* 891 F. Supp. 2d 13, 24 (D.D.C. 2012) (the "Court shall exercise its discretion to treat the argument" regarding retaliation for the plaintiff's

5

participation in a mediation "as conceded."). *Cf. Terry v. Reno,* 101 F.3d 1412, 1415 (D.C. Cir. 1996) (By failing to brief five of its nine challenges to the Access Act, they have waived them). The District Court had absolutely no obligation "to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Schneider v. Kissinger,* 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (citation omitted), *cert. denied,* 547 U.S. 1069 (2006).[2]

Either of Rocha's concessions alone is and certainly both together are fatal to Rocha's claims.[3] As a result, she does not have a valid legal malpractice claim to press or salvage on appeal. Even without the two concessions, B&G were correct on the merits and the District Court went beyond the findings of a concession by Rocha to analyze and address each substantive issue. The merits of the parties' respective positions are abundantly clear – "so clear as to justify summary action." *Id.*; *see also, Walker v. Washington,* 627 F.2d 541, 545 (D.C. Cir.) (*per curiam*),

---

[2] *See also, Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) ("[w]here the district court relies on the absence of a response as a basis for treating the motion as conceded, [this Court should] honor its enforcement of the rule.").

[3] *See In re Howard,* 2014 U.S. App. LEXIS 13380, at *3 (D.C. Cir. July 14, 2014) (**summary affirmance** where appellant attempted to raise arguments for the first time on appeal) (*citing United States v. Stover,* 329 F.3d 859, 872 (D.C. Cir. 2003) (arguments not presented to the district court "cannot be considered for the first time on appeal")). *See also, Weaver v. Bratt,* 2006 U.S. App. LEXIS 28691, at *4 (D.C. Cir. Nov. 17, 2006) (*per curiam*) (**summary affirmance** warranted as to appellant's legal malpractice claim, as appellant has not established that appellee's alleged breach of his fiduciary duties was the proximate cause of her alleged injury.)

*cert. denied,* 449 U.S. 994 (1980). That clarity of result is evident in the multiple, independent grounds for summary judgment on Counts I and II of the Second Amended Complaint (legal malpractice and breach of fiduciary duty) on appeal:

* THE LEGAL MALPRACTICE CLAIM IS BARRED BY THE APPLICABLE THREE-YEAR STATUTE OF LIMITATIONS;[4]

* TIME-BARRED OR NOT, THE CLAIM STILL FAILS ON THE MERITS BECAUSE:

    * ROCHA CONCEDED THE JUDGMENTAL IMMUNITY DOCTRINE ARGUMENT, WHICH DEFEATS THE CLAIM;[5]

    * ROCHA CONCEDED THE PROXIMATE CAUSE ARGUMENT, WHICH DEFEATS THE CLAIM AS WELL;[6]

    * EVEN ASSUMING NO CONCESSION ON THESE TWO POINTS:

        * THE JUDGMENT IMMUNITY DOCTRINE APPLIES TO THE DECISION AS TO THE APPROPRIATE FORUM IN WHICH TO PURSUE THE UNDERLYING CLAIM AND DEFEATS ROCHA'S MALPRACTICE CLAIM;[7]

        * ROCHA'S RETAINED EXPERT (AMATO) CONCEDES THAT THE CHOICE OF FORUM DECISIONS MADE BY THE DEFENDANTS WAS A MATTER OF PROFESSIONAL JUDGMENT WHICH WAS EXERCISED BY THESE DEFENDANTS (EVEN IF PLAINTIFF'S EXPERT WOULD HAVE EXERCISED HIS OWN PROFESSIONAL JUDGMENT IN A DIFFERENT MANNER); *AND*

        * ROCHA DOES NOT HAVE A VALID EXPERT OPINION ON THE STANDARD OF CARE – INDEED THE STANDARD OF CARE

---

[4] *See* Mem. Op., pp. 19-33. *See Hamburg v. Clinton,* 1999 U.S. App. LEXIS 15818, at *2, 1999 WL 506668 (D.C. Cir. June 2, 1999) (**summary affirmance** where claim barred by statute of limitations).
[5] Mem. Op., pp. 33-35. *See* footnote 3, *supra*.
[6] Mem. Op., p. 38. *See* footnote 3, *supra.*
[7] Mem. Op., pp. 35-38.

7

>
> OPINION OFFERED BY THE RETAINED EXPERT AMATO ADVANCES A POSITION THAT, IF ACCEPTED, WOULD BE VIOLATIVE OF FED. R. CIV, P. RULE 11 AND MARYLAND RULE OF CIVIL PROCEDURE 1-311;[8] *AND*

* THE BREACH OF FIDUCIARY DUTY CLAIM IS WHOLLY DERIVATIVE OF THE MALPRACTICE CLAIM AND FAILS FOR THE SAME REASONS.[9]

### 1. *The Judgmental Immunity Doctrine Precludes Rocha's Claim.*

In applying the judgmental immunity doctrine to this case, where Brown was dealing with multiple, unsettled issues of law, the District Court found (and it was in fact undisputed) that the following legal questions were unresolved in February 2009 when Brown exercised his informed, professional judgment in deciding the best forum for pursuing the underlying claim: (1) how a D.C. court would interpret D.C. Code § 12-311 in the context of asbestos-related claims like Rocha's; (2) whether the Virginia Supreme Court would reverse lower court decisions regarding how the state's statute of repose applied to asbestos-related claims like Rocha's; and (3) how a Maryland court would apply Maryland's borrowing statute to interpret and apply D.C.'s wrongful death action law, D.C.'s limitations provision in § 12-311, and Virginia's statute of repose in the context of

---

[8] Mem. Op., pp. 35-38 & 35 n. 20. *See Mavity v. Fraas,* 2007 U.S. App. LEXIS 9968, at *1-2 (D.C. Cir. Apr. 26, 2007) (*per curiam*) (**summary affirmance** in a legal malpractice/breach of fiduciary duty case where the appellant did not have requisite expert testimony regarding applicable standard of care and its violation and the appellee's alleged breach of the standard was not so evident as to be a matter of common knowledge).

[9] Mem. Op., pp. 39-40.

an asbestos-related case filed by a non-Maryland resident with evidence of only D.C. and Virginia exposure. Mem. Op., p. 36.[10]

In light of this unsettled law, whether Maryland (or any other potential forum) might or might not have been a preferred or even, ultimately, an available forum is a discretionary decision left to the informed judgment of the attorney who made it. It is legally irrelevant if Rocha and her counsel or her expert would have made a different decision in the exercise of their "informed judgment." *See Mavity v. Fraas*, 456 F. Supp. 2d 29, 33 (D.D.C. 2006) *quoting Williams v. Callaghan*, 938 F. Supp. 46, 50 (D.D.C. 1996) ("With respect to the Plaintiff's first contention that the defendants petitioned her case out of the administrative law process and instead brought her case in federal court, '[s]trategy with respect to trial tactics is generally held to be within the discretion of the attorney.'").[11]

Brown's application of his professional judgment to a choice of fora, after an informed consideration and in the face of unsettled law is not subject to attack in a legal malpractice action merely because the outcome in the underlying case was adverse to Rocha. *See Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 668 (D.C. 2009) ("[a]n attorney is not liable for an error of judgment regarding an unsettled proposition of law" and if "reasonable attorneys could differ with respect

---

[10] The third question remains unsettled to this day because, as Rocha recognizes, no Maryland court has applied the state's borrowing statute in the context of a case like Rocha's. Mem Op., p. 36.

[11] *See* footnote 8, *supra*.

to the legal issues presented, the second-guessing after the fact of . . . professional judgment [i]s not a sufficient foundation for a legal malpractice claim."); (informed judgment applied); *Seed Co. Ltd v. Westerman*, 2014 U.S. Dist. LEXIS 104998 (D.D.C. July 30, 2014) (summary judgment where attorneys were aware of the patent filing requirements and, in the exercise of their professional judgment, interpreted that the application did not require an English language translation for priority filing – an interpretation later overruled by the District Court).

Rocha's own proffered evidence demonstrated that the judgment immunity rule applies here as (a) the judgment immunity rule protects Brown's choice of forum from a second-guessing malpractice claim, (b) Rocha's designated "expert" supported Brown's choice of forum for the underlying case,[12] and (c) the "standard of care" posited by Rocha's "expert" (as the District Court found), if followed by any attorney, would be violative of Fed. R. Civ. Pro. Rule 11 (or Maryland's equivalent).[13] In other words, Rocha's malpractice claim is missing all of the *prima facie* elements of a meritorious legal malpractice claim: valid

---

[12] *See* Mem. Op., pp. 36-37 *citing* Amato Dep., ECF No. 37-4, Ex. 6 at 41:1-8 (an attorney's decision about where to file a lawsuit is "a matter of weighing the factors and applying [his or her] professional judgment"); *Id.* at 129:2-13 and 106:7-15 ("Brown exercised his professional judgment in deciding to file the case in D.C. ... and to file a back-up suit ... in Virginia); *Id.* at 41:22-46:1, 65:2-66:10, 89:1-19 (explaining that he regularly exercises his own professional judgment when making identical forum selection decisions within his law practice.).

[13] Mem. Op., p. 35 n. 20 (Amato's standard of care opinion is invalid because it requires a violation of Fed. Rule Civ. P. 11 and its Maryland equivalent, Maryland Rule of Civil Procedure 1-311) (citations omitted).

standard of care opinion, a breach of the defined standard of care by Brown, and a proximate causal connection between her claimed damages and Brown's conduct.

Without a valid standard of care opinion on this issue—*i.e.*, that the standard of care required a filing in Maryland—Rocha cannot prevail on her legal malpractice claim. *Mills v. Cooter,* 647 A.2d 1118, 1123 (D.C. 1994) (*citing O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C. 1982)).[14]

### 2. *Count II (Breach of Fiduciary Duty) Fails Because It Merely Duplicates Count I (Legal Malpractice).*

Count II (Breach of Fiduciary Duty) only involves conduct identical to the allegations and claim set forth in Count I *(e.g.,* B&G's failure to file a Maryland lawsuit) and does not rest upon any independent facts that would underpin a separate breach of fiduciary claim *in addition to* Rocha's legal malpractice claim such as a mishandling funds, a breach of loyalty, or a violation of an ethical rule.[15] Simply employing a separate breach of fiduciary duty label, while restating the same professional negligence claim in Count I does not protect Rocha's breach of fiduciary duty claim from summary judgment. *Johnson v. Sullivan,* 748 F. Supp. 2d 1, 12 (D.D.C. 2010) ("additional claims which are based on the underlying

---

[14] *See also, Mavity,* 2007 U.S. App. LEXIS 9968, at *1-2, *supra* at footnote 8.

[15] *See, e.g.*, *Griva v. Davison,* 637 A.2d 830, 846-847 (D.C. 1994) ("A violation of the Code of Professional Responsibility or of the Rules of Professional Conduct can constitute a breach of the attorney's common law fiduciary duty to the client."); *So v. Suchanek*, 670 F.3d 1304, 1308 (D.C. Cir. 2012) ("a breach occurs when an attorney represents clients with conflicting interests") (*citing Hendry v. Pelland,* 73 F.3d 397, 401 (D.C. Cir. 1996)).

11

malpractice claim cannot survive if the professional malpractice claim fails.");
*Mawalla v. Hoffman,* 569 F. Supp. 2d 253, 257 (D.D.C. 2008) (same); *Biomet, supra,* 967 A.2d at 670 n.4 (a recast of malpractice argument as breach of contract and breach of fiduciary duty also fails).

### B. The District Court Correctly Held That Rocha Failed to State a Cognizable Legal Theory Of Recovery For Her Legislative Activity Claim.

The District Court correctly granted judgment to Appellees as to Count III—the "legislative activity" claim—because Rocha failed to state any cognizable theory of liability for the legislative activity claim, including her *seriatim* assertions of theories of contract, quasi-contract, and "Good Samaritan" tort theories. As the District Court noted, at each juncture in the litigation, when B&G sought to dispose of the pending, meritless theories advanced to support this claim, the Appellant simply shifted gears, abandoned her existing position, and introduced a new pleading and a new theory of relief, none of which had even the slightest semblance of a rational basis in law or fact, but which required the parties and the District Court to start all over again:

> Trying to pin down the legal theory underlying Mrs. Rocha's legislative activity claim in Count III is akin to playing a game of "Whack-a-Mole" for Defendants: Every time Defendants believe they are about to hammer down one theory of recovery, that theory vanishes and a new theory pops up elsewhere. Nevertheless, for the reasons explained next, the Court concludes that despite her many attempts to recharacterize the basis for this claim, Mrs. Rocha fails to

12

state any cognizable legal theory entitling her to relief based on Brown's legislative activity.

Mem. Op., p. 40.

Notwithstanding the "dizzying path" (Mem. Op., p. 42) of Rocha's pleadings and legal theories with regard to her "legislative activity" claim, the District Court properly assumed that, for the sake of properly considering a dispositive motion, Brown in fact made the promise to change D.C. law that Rocha alleges, and then painstakingly and comprehensively addressed and rejected each and every possible theory of relief that at any given time was advanced by Rocha in support of her claims in this case:

A.   Rocha's *pleaded breach of contract theory* failed because: (i) the First Retainer contained an unambiguous integration clause that barred any consideration of a separate, prior or contemporaneous oral agreement; (ii) Rocha offered no legal or factual justification for why the Court should reject the unambiguous language in this clause as conclusive evidence of the parties' intent to enter a completely integrated legal services contract that made no reference to any "legislative services;" (iii) because the First Retainer was completely integrated, the Court did "not consider extrinsic evidence about the alleged prior oral agreement, since the subject of that agreement clearly falls 'within the scope' of the written agreement;" *and* (iv) Rocha acknowledged that no consideration was given

for B&G's services in exchange for Brown's alleged separate, oral promise to perform legislative activity, and thus no valid contract was formed.[16]

  B. Rocha's ***unpled promissory estoppel theory*** failed for three reasons: (i) Rocha's Second Amended Complaint made no mention of promissory estoppel as a pleaded theory of relief, nor did it specifically plead the elements required for a promissory estoppel claim as to Brown's alleged oral promise;[17] (ii) Rocha's "reliance on a promise cannot be reasonable when it is completely at odds with the terms of a written agreement covering the same transaction." Brown's alleged "legislative activity" promise was clearly contradicted by the scope of the First Retainer;[18] *and* (iii) because promissory estoppel is available only in the absence of an express, enforceable contract, and here there was an express, enforceable contract, Rocha is prohibited from relying on promissory estoppel for a prior, contradictory oral promise.[19]

  C. Rocha's ***unpled "Good Samaritan" theory*** does not impose a legal duty on Brown because, to begin with, Rocha's "Good Samaritan" tort claim is time-barred because the claim accrued no later than January 10, 2011 when the

---

[16] *See* Mem. Op., p. 45.
[17] Mem. Op., p. 43.
[18] Mem. Op., p. 46.
[19] Mem. Op., p. 46.

14

D.C. Superior Court issued the Omnibus Order dismissing the underlying case and this suit, filed on June 9, 2014, was filed beyond the three year limitations period.[20]

Further, time-barred or not, Rocha's "Good Samaritan" tort claim fails on the merits because:

> (a) in the face of a contrary "clear and unwavering line of cases," Rocha's bald assertion that D.C. courts never adopted § 323 of the *Restatement (Second) Torts* was rejected;[21]
>
> (b) the cases on which Rocha relied plainly did not involve the "Good Samaritan" duty and did not cite § 323;[22]
>
> (c) Rocha's request to consider Maryland case law for guidance on the application of the Good Samaritan rule was declined because D.C. courts *have* spoken on the "Good Samaritan" duty by repeatedly holding that § 323 provides the pertinent definition;[23]
>
> (d) under applicable Good Samaritan law in D.C., Brown would be subject to liability only if his failure to exercise reasonable care either increased the risk of physical harm to the plaintiff (beyond what it would have been had no conduct occurred) or caused the Appellant to suffer actual physical harm here, according to Appellant's own theory, her claim was time-barred in D.C., to begin with and thus no action or alleged failure to act by Brown served to increase her harm in that regard;[24] and

---

[20] Mem. Op., p. 49 n. 26. This theory of liability first arose from Rocha's expert, Amato, during his deposition as the "Good Samaritan" doctrine and then described in her Opposition as the "voluntary undertaking" doctrine. Because Rocha asserted the "Good Samaritan" duty as an ordinary negligence action, not a legal malpractice claim, there was no basis for applying the continuous representation rule to toll the limitations period.

[21] Mem. Op., p. 51.

[22] *Id.*

[23] Mem. Op., p. 55.

[24] Mem. Op., p. 48.

(e) even if economic harm is included: (i) not only is it undisputed that Rocha's legislative activity claim does not implicate any actual or potential physical harm to her person or property, but also Brown's legislative activity did not "increase the risk" of any type of harm to her, whether physical **or economic**.[25]

While the District Court treated the "legislative activity" claim and its ever-shifting asserted legal basis with the utmost seriousness, in the end, clear legal precedent rejects each legal theory that Rocha advanced, abandoned, or, in fact never pleaded but somehow got insinuated into the case. As Rocha has adjusted her legal theories, all of these issues were briefed, and briefed again, below. No additional briefing in this Court would accomplish any purpose. As the District Court held, whether pleaded, advanced and abandoned, or simply argued by her expert with no supporting pleading, every theory (express promise, implied promise, promissory estoppel, Good Samaritan) fails as a matter of law.[26]

In its simplest form, all that could be said to have happened in this case with regard to D.C. legislation is what Mrs. Rocha herself described in her deposition: Brown stated his intent to contact the DC-TLA about the ambiguities in the D.C. limitations statue and did so.[27] The DC-TLA then raised the issue with the D.C. Council, and after two interim steps in October 2010 (i.e., the "Asbestos Statute of Limitations Clarification Emergency Declaration Resolution of 2010" and the

---

[25] Mem. Op., p. 57.
[26] *See* Mem. Op., pp. 39-58.
[27] *See* Mem. Op., p. 43 *citing* N. Rocha Dep., ECF 37-1, Ex. 1 at 129:10-15.

16

"Asbestos Statute of Limitations Clarification Emergency Act of 2010"), the D.C. council codified a new law on June 3, 2011.[28] To the extent any "promise" was made by Brown to Rocha, he did what Mrs. Rocha said he promised to do.

In this legal malpractice case, which arises from the dismissal of Rocha's asbestos-related claims in the D.C. Superior Court, there is obviously no physical harm or physical impairment (nor any property damage) alleged in connection with the issues regarding any legislative activity to effect a change in statutory language and no basis to apply any legal "special duty" concepts such as "Good Samaritan." This Court has applied the *Restatement* provisions above in just this manner and dismissed claims attempting to assert a negligent undertaking to perform a service where there is no evidence of required physical harm. *See SEIU Health and Welfare Fund, supra* at 92 ("since Plaintiffs have not alleged any physical harm, as defined by the Restatement, they cannot recover on their special duty claims.").[29]

The Appellant, for her part, ignored the *SEIU* case as well as *Haynesworth v. D.H. Stevens Co.,* 645 A.2d 1095, 1097 (D.C. 1994) ("Although the Restatement has not been formally adopted by this court, it is clear that the particular concept advanced by Haynesworth is well known and has been readily applied, where

---

[28] *See* Mem. Op., Section II, D, pp. 7-9; Resolution 18-642, ECF No. 37-9, Ex. 39; D.C. Act 18-585, ECF No. 37-9, Ex. 40.

[29] Although *SEIU* was reversed, the dismissal of the "special duty" counts under the Restatement analysis was not appealed and was not considered or affected by the reversal.

17

appropriate…Because Haynesworth has relied heavily upon Restatement principles, we expressly affirm the trial judge's ruling that appellant failed to satisfy any subsection of the Restatement earlier quoted."); *Long v. District of Columbia,* 261 U.S. App. D.C. 1, 820 F.2d 409, 419 (D.C. Cir. 1987), both of which cited Section 323 with approval. Instead, she relied on, and persisted in relying upon, the wrong line of cases that had no application to the undisputed facts in this case.

Further, as the District Court correctly found, Rocha suffered absolutely no harm from any issue related to the success or failure of any alleged legislative activity by Brown. Rocha has continuously alleged in her pleadings that her claim was barred *ab initio* by D.C. Code § 12-311 statute of limitations, and therefore Brown should not have filed her claims in D.C. in the first place. In light of that allegation, (and, if one assumes that D.C. Superior Court was indeed correct in the dismissal of her claim by operation of its narrow interpretation of D.C. Code § 12-311), **then Rocha found herself in exactly the same position (*i.e.*, a dismissed claim) after the Superior Court's assessment of the non-retroactive application of the emergency act and resolution and the resulting inapplicability of that legislation to the Rocha claim, as she was in before any legislative activity occurred**. In other words, Brown's legislative activities did not cause any damages or increase the risk of harm to Mrs. Rocha beyond the Superior

Court's original, strict interpretation of D.C. § 12-311. *See* Restatement 2d of Torts, § 323; *see also, District of Columbia v. Moxley,* 471 F. Supp. 777, 783 (D.D.C. 1979) (applying Restatement 2d of Torts, § 323) ("Moxley does not allege, however, that the hospital, by inquiring into the decedent's financial situation, either increased the risk of harm to him or induced his reliance on its undertaking. Thus, he has failed to state a cause of action, since one or the other of these allegations is a necessary element of the tort.").[30] The test is not whether the risk of harm to Rocha was increased over what it would have been if Brown had not been negligent. Rather, liability would be imposed upon Brown only if the risk is increased over what it would have been had Brown not engaged in the undertaking at all. This test can never be satisfied in this case.

Every legal issue presented in this case has been fully briefed and was exhaustively treated by the district Court. Further briefing of these same issues is unnecessary and summary affirmance is appropriate.

Date: June 23, 2015                                             Respectfully submitted,

                                                                BROWN & GOULD, LLP
                                                                and Daniel A. Brown
                                                                By Counsel

---

[30] As noted above, Section 323 requires "physical harm," which is not at issue in this case. Nevertheless, and only assuming *arguendo* economic harm would be included in the claim, the Good Samaritan (here, Brown) must cause harm above and beyond what the injured party would have suffered in order for the plaintiff to recover under that theory. *See* Restatement 2d of Torts, § 323. Mrs. Rocha cannot satisfy this test.

19

SANDS ANDERSON PC

      /s/ J. Jonathan Schraub
_____
J. Jonathan Schraub (26879)
Michael T. Marr (56065)
1497 Chain Bridge Road, Suite 202
McLean, VA  22101
Main:  (703) 893-3600
Fax:  (703) 893-8484
jjschraub@sandsanderson.com
mmarr@sandsanderson.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via the ECF system on June 23, 2015 on:

> Peter T. Enslein, Esquire
> Law Offices of Peter T. Enslein. P.C.
> 1738 Wisconsin Ave. N.W.
> Washington, D.C. 20007
> peter@ensleinlaw.com
> *Counsel for Appellant Nieves Rocha*
>
> Aaron L. Handleman (# 48728)
> Laura M.K. Hassler (#988969)
> ECCLESTON & WOLF, P.C.
> 1629 K Street, N.W., Suite 260
> Washington, D.C. 20006
> (202) 857-1696 (Tel)
> (202) 857-0762 (Fax)
> handleman@ewdc.com
> hassler@ewdc.com
> *Counsel for Appellee David M. Lipman, P.A.*

                                         /s/
                              J. Jonathan Schraub